[COPYRIGHT, 1901, BY CARL G. JAHN.]

(Superior Court of Cincinnati.)
Special Term, 1901.

## JOHN W. HARPER v. THE CENTRAL TRUST & SAFE DEPOSIT COMPANY et al.

(1). The doctrine of cy-pres, as a doctrine of general equitable jurisdiction, is well recognized in this country and in the state of Ohio.

(2). It is not necessary that the object of the trust snould cease entirely to exist, or that the express trust should become absolutely impossible of application before the doctrine of cy-pres can be invoked.

(3) Under the circumstances stated in this opinion, a court of chancery in the exercise of its jurisdiction in equity, has the power to apply the trust as near the testators' particular intention—cy-pres—as possible.

JACKSON, J.

The facts of this case are substantially as follows: On or about the 29th day of March, 1884, John J. Desmond, acting as an officer of the First Ohio National Guard, lost his life while endeavoring to save public property in the city of Cincinnati from destruction by a lawless mob. Thereafter the plaintiff, in connection with numerous others, contributed various sums of money, in the aggregate amounting to about $4,200, the principal of which was to be held in trust by the Trust Company, and the income therefrom to be paid pursuant to the terms of the trust declared by the parties creating said fund.

This instrument of trust, dated April 4, 1884, is as follows:

''For the purpose of directly aiding the widowed mother of Captain John Desmond who lost his life while vainly endeavoring to save the public property of this city from destruction by a lawless mob, and for the further purpose of expressing our appreciation of the services of members of the First Regiment Ohio National Guard and forming a permanent fund to be known as the National Guard Fund, the principal of which is to be held in trust by the Fidelity Safe Deposit & Trust Company, and the income therefrom to be paid over to the widowed mother of said Captain John J. Desmond in semi-annual installments as long as she may live. At her death the principal and accumulating interest to be held by said Fidelity Safe Deposit & Trust Company until such time as a committee composed of the president of said Fidelity Safe Deposit & Trust Company and respective commanding officers of separate military organizations composed mainly or entirely of citizens of this city shall elect and decide to pay out of the income of this fund such sum or sums of money as may in their judg-

ment be proper for the purpose of assisting in the support of any deserving or dependent relatives of any members of such military organizations who may hereafter die from wounds or lose their lives in the performance of assigned military duty."

The mother of John J. Desmond, who was the first beneficiary named in the trust instrument, died on or about the — day of ——, 1884. She received the income arising from the trust fund during her lifetime. Since the death of Mrs. Desmond the interest has accumulated upon said fund until the trust company now holds a fund amounting to about $9,000, no one having received any benefit therefrom since the death of Mrs. Desmond.

The plaintiff claims that all separate military organizations referred to in the trust instrument have ceased to exist, and that no member of such military organizations has died from wounds or lost his life while in the performance of assigned military duty, within the terms of the trust, since the death of said John J. Desmond. The plaintiff claims that the object of the said trust is impracticable, and that the purposes of the donors of said fund cannot be carried out, and that the purpose of the trust has failed. Plaintiff therefore prays that the court order and decree that said fund and the income derived therefrom be applied, used and distributed cy-pres to such purposes as the court may deem just and equitable.

To this petition John Procter, William Schuster, Charles F. Hake, Harry A. Havlin and Clarence E. Patton, being the commanding officers of the different companies of the Ohio National Guard, filed answer denying that the separate military organizations referred to in the instrument of trust have ceased to exist. They deny that the object of said trust is impracticable, but they say that the mode of application of the trust fund described in the instrument is impracticable. They therefore pray that the accumulated interest on said fund may be applied and used in a practical manner cy-pres to the benefit of the members of the First Separate Battalion of Infantry, and to the members of Battery "B", until such time as the mode of application prescribed in the instrument of trust may become practicable.

Michael J. Malone, Edward G. Muthert and Charles Cook also file answer and cross-petition in which they claim as follows, viz.: That said Michael J. Malone was sergant of Company "B" First Regiment O. N. G., and while discharging his duty as such and endeavoring to protect the public property in the city of Cincinnati was shot and wounded on or about the 29th day of March, 1884. That said Edward G. Muthert was in March, 1884, a private in Company "I", First Regiment O. N. G., and while discharging his duty as such and endeavoring to protect public property in Cincinnati, was wounded on or about the 29th day of March, 1884. That said Charles Cook was in March, 1884, a corporal in Company "I", First Regiment O. N. G., and while discharging his duty as such and endeavoring to protect public property in Cincinnati, was shot and wounded on or about the 29th day of March, 1884.

Cook, Malone and Muthert further say that the object of the trust fund described in the petition is impracticable, and they therefore pray that the fund and the income derived therefrom be applied, used and distributed cy-pres to their benefit and to the benefit of all other members of the First Regiment O. N. G. who were wounded while endeavoring to protect public property in Cincinnati on that occasion.

The Trust Company files an answer denying that the object of the trust or the application thereof has become impracticable, and insisting that the fund be kept intact.

It is now about seventeen years since the "Court house Riot" of 1884 and the death of John J. Desmond, who lost his life in defense of the public property; and since the death of Mrs. Desmond, who was the first beneficiary named in the trust instrument, there have been no members of such military organization who have died from wounds or lost their lives in the performance of assigned military duty within the meaning of the aforesaid trust.

It is true that about seventeen members of the First Regiment O. N. G. died from illness contracted while on duty during the recent war with Spain, but the officers and soldiers of the First Ohio Infantry during the war with Spain were in fact United States volunteers, and were not in fact serving at that time as members of the First O. N. G. within the meaning of the trust instrument. They were in fact officers and soldiers in the Federal army, and would more properly look to the Federal government for reimbursement for injuries in the Federal service. The Desmond fund being essentially a national guard fund, could not properly be applied to lighten the obligation and duty of the Federal government.

Strictly speaking it cannot be said that the object of the trust has entirely failed, because it is, of course, possible that at some future time some members of the military organizations in question may hereafter die from wounds or lose their lives in the performance of assigned military duty. But it is now seventeen years since the occurrence in question, and it must be conceded that

the happening of events which might result in the loss of lives to the members of the organization are very improbable. Under such circumstances we think it clear that a court of chancery in the exercise of its jurisdiction in equity has the power to apply the trust as near the testators' particular intention—cy-pres—as possible.

The doctrine of cy-pres, as a doctrine of general equitable jurisdiction, as distinguished from a prerogative of sovereignty, is well recognized in this country and in the state of Ohio. See Jackson v. Phillips, 14 Allen, 574, and Urney v. Wooden, 1 Ohio St., 160.

Neither is it necessary that the object of the trust should cease to exist, or that the express trust should become absolutely impossible of appplication before the doctrine of cy-pres can be invoked.

The best considered English authorities seem to hold that it is sufficient if it is highly improbable that the circumstances will arise calling for the application of the trust, and that the question of probability is one appealing largely to the judgment and discretion of the chancellor. See Ironmonger's Company v. Attorney General, 10 Clark & Finnelly's Reports, 98, where the house of lords construed the provisions of the will of a testator giving to an incorporated company upon trust the residue of testator's estate to apply one moiety of the income to the redemption of British slaves in Turkey or Barbary. The testator positively forbade his trustees to diminish the capital by giving away any part of it, or to apply the income to any use or uses but those mentioned in his will. The income of a moiety of the residue having for many years been suffered to accumulate in consequence of their being no British slaves in Turkey or Barbary, it was declared by the house of lords that after setting apart a certain sum out of that moiety and its accumulations to provide a fund for the redemption of any British subjects who might thereafter be held in slavery in Turkey or Barbary, the income of the surplus of that moiety and its accumulations might be applied to other charitable objects mentioned in testator's will.

In the case of Ironmongers Company v. Attorney General reference is also made to the unreported cases of the Attorney General v. The Bishop of Llandaff, where there was a bequest to increase the scholarships of Oxford and Cambridge besides a gift for the redemption of British captives (no particular captives being designated); on failure of the latter object, there being no British captives at that time, the court permitted the gift to be applied to the further increase of the scholarships. Now assuredly it could not be urged in that case that there was no

possibility of there being British captives sometime in the future, and that therefore the object of the trust had entirely failed.

Aside from this there is the further consideration that any further accumulation of this fund against a future contingency without accompanying present benefit to anyone, would be unreasonable. A court of equity undoubtedly has the power to prevent an unreasonable accumulation of a fund for a future contingency. In Perry on Trusts, 3rd Ed., section 399, it is said:

"Where there are no statutes regulating accumulations, a direction to accumulate a fund for a charity for a term beyond the common law limit does not vitiate the gift for the charity, although no limit has been determined by the court during which an accumulation for a charity may be permitted. It is probable that courts would take care that no extraordinary or extravagant term for accumulation should be allowed for a future and prospective good."

The same principle is recognized in the case of Woodruff v. Marsh, 63 Ct., 125; and in Duggan v. Slocum, 83 Fed. Rep., 244.

In view of these considerations it seems reasonable that the court should now exercise its discretion in applying, from this time on, the interest on the accumulated fund as nearly as can be to the original intention of the donors. The fund itself must remain intact. But in the mean time it would seem that equity and justice would be served by considering the declared object of the instrument of trust, which is "for the purpose of expressing our appreciaton of the services of members of the First Regiment Ohio National Guard", etc.; and therefore until the contingency stipulated for in the instrument arises, viz., that members of such military organizations do hereafter lose their lives in the performance of assigned military duty leaving deserving or dependent relatives, it seems equitable and just that the income arising from the now accumulated fund shall go to Michael J. Malone, Charles Cook and Edward G. Muthert.

The evidence fails to show that the 1st Reg. O. N. G. has ceased to exist. On the contrary, it is apparent that there are still four companies of this regiment in existence fully equipped, etc. But the evidence fails to show that these companies or any of them are, at present, in actual need of any benefit from this fund. The evidence does however show that Malone, Cook and Muthert, especially Muthert, are in needy circumstances, and most worthy and deserving objects of charity.

The evidence shows that Michael J. Malone has received from the state of

Ohio the sum of seven hundred and fifty dollars by way of recognition of his services and compensation for his injuries received; and that Charles Cook has received from the state of Ohio the sum of seven hundred dollars on this account; and that Edward G. Muthert has so far received nothing. It would seem therefore that justice would be subserved by giving to Muthert one-half of the income arising from the accumulated fund, and to Malone and Cook each one-fourth.

A decree may be taken accordingly.

Sayler & Sayler, for Plaintiff.

Jos. W. Sharts, for Procter, Schuster, Hake, Havlin & Patton.

Eldon R. James, for Malone, Muthert and Cook.

Drausin Wulsin, for Trust Company.